ACCEPTED
01-15-00076-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
7/13/2015 9:46:34 PM
CHRISTOPHER PRINE
CLERK

NO. 01-15-00076-CV

IN THE 1ST COURT OF APPEALS OF TEXAS

AT HOUSTON

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
7/13/2015 9:46:34 PM
CHRISTOPHER A. PRINE
Clerk

| | § | |
|---|---|---|
| Alan Nelson Crotts, Appellant | § | **Cause No. 14 – DCV - 217232** |
| Vs. | § | In the 268th District Court of |
| John F. Healey, Jr., Fort Bend County District Attorney, & Jeff Strange, Assistant District Attorney, Appellees | § § § | Fort Bend County, Texas |

*On appeal from the 268th Judicial District Court of Fort Bend County, Texas*

*APPELLANT'S REPLY BRIEF*

Alan Nelson Crotts, Pro Se

19910 Grand Bluff Grove

Richmond, Texas 77407

**APPELLANT'S REPLY BRIEF**

The Appellant, **Alan Nelson Crotts**, responds as follows to the

APPELLEE'S BRIEF:

### A. CONTROVERTED FACTS

1.  In the Appellee's *STATEMENT OF THE CASE*, the Appellees alleged that

    the Appellant filed the case after he failed to obtain credit owed to him

    through child support proceedings. This is false. The Appellant reported the

    theft after a well-practiced attorney informed the Appellant that the

    grievances committed against him legally constituted a theft. The Appellant

    was able to independently verify this claim and then chose to report the

    theft.

2.  In the Appellee's *STATEMENT OF THE CASE*, the Appellees also state that

    the case was dismissed based on the Appellees' *immunity from suit* and

    because the suit constituted a *collateral attack* upon the Appellant's prior

    child support proceeding.

    The Appellant controverts that the trial court dismissed the suit

    because he recognized the Appellees' *immunity from suit*. The reporter's

record of the hearing on the DEFENDANTS' PLEA TO THE JURISDICTION does not support this assertion.

The Appellant also controverts the claim that the case was dismissed because it was considered a *collateral attack* on the Appellant's child support proceeding. First, the reporter's record makes it absolutely clear that the trial court considered this suit a collateral attack on the Appellant's civil suit against the perpetrator of the alleged theft, not on any child support proceeding (2 R.R. 14-15). Second, that matter of the credit owed to the Appellant has never been heard before the court in any child support proceeding.

3.  In the Appellee's *STATEMENT OF THE FACTS, B. Factual Background, Item 1*, the Appellees have included the information regarding a hearing on August 20th, 2013, which is related to the Appellant's CHILD SUPPORT ORDERS from Cause No. 11-DCV-193084. The Appellant controverts that this hearing has any bearing in this matter because the Appellant's claim for the $7,000 credit was not heard during this hearing nor at any other child support proceeding.

4.  In the Appellee's *STATEMENT OF THE FACTS, B. Factual Background, Item 2*, the Appellees claim that the Appellant was "...denied and

disallowed..." any credits for direct payments. This statement is blatantly false. To date, the matter of the Appellant's credit for direct payments has not been heard before any court in a child support proceeding. This assertion is also irrelevant to these proceedings as they do not mitigate whether a theft was committed nor whether the Appellees violated the Appellant's civil rights, breached a contract with the Appellant, or committed an abuse of process that aggrieved the Appellant.

5. In the Appellee's *STATEMENT OF THE FACTS, B. Factual Background, Item 3*, the Appellees state the Appellant requested that the "...denial and disallowance of an alleged $7,000 credit..." be prosecuted as a theft. In point of fact, the Appellant has never been 'denied or disallowed' the $7,000 credit by any court to date and stating such misconstrues the nature of the theft reported by the Appellant. The Appellant reported to the police, and subsequently the Appellees directly, that Jessalyn Cole had acquired approximately $7,000 which rightfully belonged to the Appellant and to which she unquestionably had no entitlement and to which she knew she had no entitlement. They were also informed that Jessalyn Cole had spent the money and refused to return or repay the funds. Pursuant to the *Texas Penal Code, Chapter 31*, this actions constitute a felony theft.

6.    In the Appellee's *STATEMENT OF THE FACTS, B. Factual Background, Item 4,* the Appellees claim they are being sued for "...their decision not to prosecute Jessalyn Cole..." for theft.  The Appellant controverts this statement and asserts that the Appellees are being sued for clearly violating the Appellant's 14th Amendment rights, breaching an employment contract they have with the Appellant and other citizens of Fort Bend County, and for abuse of the legal process.  These assertions are a matter of record.


### B.    COUNTER-ARGUMENTS

1.    **Appellees are not entitle to *immunity from suit* in this action.**

First, as noted in the BRIEF OF APPELLANT, the Appellees are not protected by *sovereign immunity* in this matter pursuant to Supreme Court decisions in *Seminole Tribe v. Florida* and *Fitzpatrick v. Bitzer.*  In short, the Supreme has upheld that the 14th Amendment placed limitations on the 11th Amendment with respect to 14th Amendment rights.  Therefore, the *sovereign immunity* usually enjoyed by the State and its officials has been properly and definitively abrogated by this suit for damages pursuant to the 14th Amendment and *U.S.C. 42, Section 1983.*  Likewise, there is no necessity for a waiver of immunity by the State.

Second, the Appellees are not protected by *absolute immunity* in this suit because their actions do not constitute actions "intimately associated with the judicial phase criminal process" nor were they related to the initiation of a prosecution and the presentation of the State's case. The actions alleged by the Appellant are that the Appellees advised the Sugar Land Police Department that they would not prosecute a case prior to receiving any evidence or statements from the victim. In essence, the Appellees performed no duties related to their office. At most, they were acting in an advisory capacity that would not be protected by *absolute immunity*.

To wit, in *Burns v. Reed* the Supreme Court stated "...Advising the police in the investigative phase of a criminal case is not so "intimately associated with the judicial phase of the criminal process" that it qualifies for absolute prosecutorial immunity" (*Burns v. Reed*, 500 U.S. 478, 492-496 (1991)). From this decision, subsequent courts have decided that actions taken by a prosecutor during the investigatory phase of a criminal proceeding are not protected by *absolute immunity*. The courts have also derived from this decision that a prosecutor is immune when performing the function of evaluating evidence in pre-trial proceedings. From the record, it can clearly be discerned that this matter was well inside the investigative phase, if not before, and the Appellees could not have been

acting in an evaluative role. In fact, the matter was so early in the investigative phase that a proper statement and evidence had not even been collected the police. Furthermore, the actions taken by the Appellees cannot be considered evaluative in nature because the evidence had not been collected and a proper statement of the alleged crime had not been taken.

The Appellees also suggest that the wording in *Imbler v. Pachtman* was taken out of context by the Appellant. This assumption is incorrect. In *Font v. Carr*, the Court acknowledged the narrow phrasing of the Supreme Court decision and reacted by stating "Although the Court in *Imbler* left open the question whether absolute immunity would apply to "those aspects of the prosecutor's responsibility that would cast him in the role of an administrator or investigative officer rather than that of an advocate," 424 U.S. at 430-31, 96 S.Ct. at 995, the Court addressed those prosecutorial functions in *Burns v. Reed*" (*Font v. Carr*, 867 S.W. 2d 873 (1993). Relying on *Burns v. Reed*, the Appellees would have to show their actions took place after the investigative phase and constituted a decision based on an evaluation of the evidence and the statement of victim, which would be impossible since no evidence or statement were taken.

It is important to note that *Font v. Carr* was cited in the decision for *Wharton v. Clawson*, which the Appellees believe give them license not to perform

the duties of their office. Based on a review of *Wharton v. Clawson*, that case law is not applicable here because the prosecutor in that case had received and evaluated evidence before deciding not to prosecute (*Wharton v. Clawson*, 941 S.W. 2d 267 (1996)). In this suit, the Appellant claims that the Appellees advised the Sugar Land Police Department they would not prosecute before receiving any evidence or even a statement with which to evaluate the alleged crime for possible prosecution. These actions cannot be held as congruent with those actions taken by the prosecutor in *Wharton v. Clawson*.

There is a clear distinction between a prosecutor advising the police they will not prosecute a crime and the actual decision not to prosecute. When acting in the capacity of prosecutor, the decision not to prosecute must come after the facts and the evidence have been evaluated. This is synonymous with the way a doctor must evaluate a patient before giving a diagnosis. The decision must be an informed decision that is reached after all relevant factors at hand are reviewed and evaluated. It is these duties of the prosecutor that constitute a protected function of that office. Simply advising the police not to investigate a crime and that they will not prosecute the crime based a loose, second hand recitation of the alleged crime is not protected by *absolute immunity*.

Furthermore, a decision whether or not to prosecute is not in itself a protected action. The courts have consistently used the 'function' test to determine the applicability of *absolute immunity* versus *qualified immunity*. Just as a doctor has not fulfilled his duty as a medical professional if he gives a diagnosis before even examining the patient, a prosecutor has not fulfilled the duties of his office if he decides not to prosecute before even examining the case. Using the 'function' test, the Appellees were clearly not performing a function that has historically been protected by *absolute immunity* when they advise the Sugar Land Police Department at the initiation of the complaint that they would not prosecute. To construe the decision in *Wharton v. Clawson* and similar cases as a carte blanche for prosecutors not to do their jobs is inherently unconstitutional and offensive the 14th Amendment and the purpose of *U.S.C. 42, Section 1983*. Such construction would allow a prosecutors to let murderers, thieves, and all manner of offenders to run free and unchecked while leaving his constituency without redress until the next election period. It is also important to note that historically the courts have abstained from expanding the umbrella of *absolutely immunity* and such construction would certainly expand this protection to an undue and dangerous degree.

Third, *qualified immunity* is also inapplicable in this matter. The Appellees' did not take any due diligence in performing their duties, therefore it is self-evident their actions could not have been taken good faith. They clearly violated the Appellant's well-established right to equal protection under the law and any reasonable person would have known of this right. Any reasonable person would have known that the Appellant was the victim of theft and that he had the right to equal protection of law via the investigation and prosecution of this theft in the same manner any theft would be investigated and prosecuted.

Finally, the Appellees are also being sued for Breach of Contract in their individual capacity. The basis of this cause of action is that the Appellees have an employment contract, implied or explicit, with the Appellant and other citizens of Fort Bend County. The Appellees entered into this contract as individual citizens, not as public servants. It would be impossible for the Appellees to enter into a contract to be a prosecutor in the capacity of a prosecutor. Therefore, they are afforded no immunity against the cause of action for Breach of Contract in their individual capacities.

2. **This suit cannot reasonably be consider a *collateral attack* on any existing child support proceeding.**

The matter of the $7,000 credit has never been heard in a child support proceeding. The Appellant did request for the credit to be given and a hearing was scheduled, but the matter was not heard on that day. The Appellees have offered no evidence to the contrary.

The Appellant believes that the Appellees are attaching significance to the statement "NO CREDIT FOR INFORMAL PAYMENTS" contained in the ORDER IN SUIT FOR MODIFICATION OF SUPPORT ORDER AND TO CONFIRM SUPPORT ARREARAGE (3 R.R. Exhibit 3, p 9). The Appellant contends that no reasonable person would construe this statement as a waiver to a claim for a specific $7,000 credit for a series of informal payments and unowed arrearage payments. It is clearly a generic portion of such pre-printed child support orders and it lacks the specificity for any intelligent person to associate it with a known individual credit. The Appellant further contends that it is simply a statement acknowledging that no credit for informal payments was given on that day.

Pursuant to the above, it is impossible for this suit to be a *collateral attack* on any child support proceedings.

It is also important to note that a *collateral attack* in and of itself would not and could not be the basis for dismissal. The trial court would also be obligated to

allow time for the offending party to correct any deficiencies in the pleadings if the trial court believed the suit offended or interfered with any other ongoing proceeding.

3.     **A dismissal *with prejudice* was not an appropriate in this matter.**

As stated in the BRIEF OF APPELLANT, even if the trial court had mistakenly believed this suit was a *collateral attack* on any other suit, a dismissal *with prejudice* would still not be the appropriate action.  In short, it is well settled that a suit should not be dismissed *with prejudice* unless the subject matter of the suit can be considered fully adjudicated on the merits of the case.  Therefore, the trial court was obligated not to dismiss this suit *with prejudice*.

## PRAYER

The Appellant prays the Court acknowledge the controverted facts and counter-arguments presented herein and grant the relief requested in the BRIEF OF APPELLANT. The Appellant further requests that this Court grant any other relief to which the Appellant may be entitled.

Respectfully Submitted,

**Alan N. Crotts, Pro Se**
19910 Grand Bluff Grove
Richmond, Texas 77407
Telephone: (281)384-0350

## *CERTIFICATE OF SERVICE*

This certifies that the undersigned served this APPELLANT'S REPLY BRIEF on JOHN F. HEALEY, JR., and JEFF STRANGE, by and through their attorney of record, RANDALL W. MORSE, at 301 JACKSON STREET, RICHMOND, TEXAS 77469 by CERTIFIED RETURN RECEIPT MAIL on _____7/14/15_____.

Month/ Day/ Year

_____
Alan N. Crotts, Pro Se

## CERTIFICATE OF COMPLIANCE WITH APPELLATE RULE 9.4(i)

I certify that this document contains **2,279** words, as indicated by the word-count function of the computer program used to prepare it, and excluding the caption, signature, proof of service, certification, and certificate of compliance as provided by Appellate Rule 9.4(i).

_____
Alan N. Crotts, Pro Se